**Paul E. MILLER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 879S223.

Supreme Court of Indiana.

March 13, 1981.

Rehearing Denied May 5, 1981.

Joseph R. Kilmer, Pendleton, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a trial by jury of the theft of property of Danny Turner, Ind. Code § 35–43–4–2 (Burns 1979), and of being an habitual offender, Ind. Code § 35–50–2–8 (Burns 1979). This direct appeal challenges the sufficiency of the evidence to sustain the verdict upon the theft and the legality of his having been sentenced as an habitual offender.

■ Defendant has assigned as error the court's denial of his motion for judgment at the conclusion of the State's evidence in chief, but, error, if any, with respect to that ruling was waived when he elected to present evidence in his defense. *Love v. State*, (1980) Ind., 400 N.E.2d 1371, 1374. However, the same issue is presented upon his challenge to the sufficiency to sustain the verdict. The evidence adduced at trial supportive of the verdict disclosed that the premises of Danny Turner had been burglarized between 7:30 a. m. and 7:45 p. m. on February 23, 1978 in Kokomo, Indiana. Officer Williams, of the Anderson, Indiana Police Department, was investigating that crime, and at 8:15 p. m. of that day he was at the Olympia Bar, in Anderson, where James Farthing, who was known to be a dealer in stolen property, was employed as a bartender. While there, Williams observed Farthing, the defendant and Gale Fields engaging in conversation; and he observed either the defendant or Fields say that he did not want to take "the stuff" back to Kokomo and Farthing to say that he was not interested in buying "the stuff." The three then went to the parking lot.

Williams summoned assistance by radio, and Officers Prizer and Stanley responded. Upon or shortly after their arrival, they saw the defendant, Fields and Farthing standing next to a blue Pontiac Tempest automobile. The three peered into the vehicle, entered it and began to talk.

After some brief period of time, Farthing got out of the vehicle and re-entered the Bar, and the automobile, with Fields and the defendant therein, was maneuvered around the parking lot to a point behind a parked housetrailer. One of the two occupants of the vehicle exited, removed a sew-

ing machine and two stereo-speakers therefrom and re-entered the automobile, abandoning the sewing machine and speakers. The automobile was then driven to the public street. The observers could not discern what the two were saying during the aforesaid activity, but they overheard their voices, which were raised, as if in argument.

When the automobile exited from the parking lot into the street, the defendant got out but walked in the same direction as the car was moving. Prizer and Stanley approached him and identified themselves as policemen. Thereupon the defendant ran but was apprehended by the officers. Fields, while continuing in the automobile was also apprehended by other police officers who had been summoned.

The automobile from which Defendant had just taken leave contained a number of items of stolen property, including a television set and the tape recorder identified at trial as having been taken in the aforementioned Kokomo burglary. The vehicle also contained property which belonged to the defendant, and the license plate displayed upon the automobile had been issued to "Paul E. and/or J. L. Miller."

The statute under which the defendant was charged and convicted provides that a person commits a theft if he knowingly or intentionally exerts unauthorized control over the property of another person with intent to deprive the other person of any part of its value or use; and it is the defendant's sole contention upon the sufficiency issue that there was no evidence that he exerted any control over the Turner property, but we disagree.

"Upon a review for sufficient evidence this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed." (Citation omitted). "In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." *Loyd v. State*, (1980) Ind., 398 N.E.2d 1260, 1264.

A reasonable inference could be drawn from the aforestated facts that the defendant and Fields were acting in consort, that the property was in their joint possession and control and that they jointly offered to barter it to Farthing.

The inference of guilt of the defendant is also strengthened by his attempted escape when the police sought to apprehend him. *Thomas v. State*, (1970) 254 Ind. 561, 563, 261 N.E.2d 224, 225.

■ It is clear that there was presented to the jury substantial probative evidence from which a reasonable man could find not only the requisite possession by the defendant but the other requisite elements of the crime as well, all beyond a reasonable doubt.

Defendant has assigned several issues with respect to the legality of his having been sentenced as an habitual criminal, one of which compels us to order the sentence vacated and to remand the cause for re-trial upon the issue of habitual offender. See *State v. McMillan*, (1980) Ind., 409 N.E.2d 612, 618.

The information for theft was filed on February 24, 1978. Following several continuances and an amendment to the information, the defendant was arraigned and entered a plea of not guilty on April 18, 1978. The information contained no allegations with respect to prior offenses.

On September 15, 1978, under the same cause number, the State filed what it denominated as "Count No. II Information for Habitual Offender I.C. 35–50–2–8," which alleged prior convictions for burglary in 1956 and 1967.

On March 30, 1979, the trial commenced upon the theft charge and was concluded on April 2, with a verdict of guilty. Immediately thereafter, the defendant was arraigned on the habitual offender count and trial thereon was set for the following morning, April 3, 1979.

While the theft and habitual criminal charges were pending in the Madison County Superior Court, the defendant also stood

charged in Howard County with a count of burglary and a count of rape. He had been convicted upon those counts one week prior to the trial in the case before us but had not yet been sentenced.

On April 3, 1979, immediately before proceeding with the habitual offender proceedings, the State was allowed over the defendant's objection to amend the habitual offender count to include the aforementioned convictions for rape and burglary. The defendant contends that it was error for the trial court to permit that amendment to include counts upon which he had not been sentenced, and we agree.

Ind. Code § 35–50–2–8 (Burns 1979) in pertinent part:

"(a) The state may seek to have a person sentenced as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.
\* \* \*

"(b) After he has been convicted and *sentenced* for a felony committed after *sentencing* for a prior unrelated felony conviction, a person has accumulated two (2) prior unrelated felony convictions." (Emphasis added).

The State admits that the convictions for which the defendant had not yet been sentenced could not properly be utilized under the habitual offender statute; but it contends, nevertheless, that the inclusion of them in the charge was mere surplusage and harmless error, because the adjudication of the defendant as an habitual offender was supported by the evidence of the 1956 and 1967 convictions. This position is not tenable.

The jury found the defendant to be an habitual offender upon the charge which alleged four prior convictions and upon evidence as to all four. It is clear from the statute that to sustain a sentence under it, the State must show that the defendant had been previously *twice convicted* and *twice sentenced* for felonies, that the commission of the second offense was subse-

quent to his having been sentenced upon the first and that the commission of the principal offense upon which the enhanced punishment is being sought was subsequent to his having been sentenced upon the second conviction. Under previous law, it was also required that the defendant had been imprisoned upon the first sentencing prior to commission of the second offense and that he had been imprisoned upon the second sentencing prior to the commission of the principal offense. *Cooper v. State,* (1972) 259 Ind. 107, 114, 284 N.E.2d 799, 803. The requirement of imprisonment is not included in the current statute, but the sequence of offenses, convictions and sentencing was expressly retained.

Not only had the defendant not been sentenced for the third and fourth offenses charged, he had not yet been convicted of them at the time the principal offense was committed, and for all we know, they may even have been committed subsequently to its commission.

"The purpose of our habitual criminal statute is to give offenders due warning by conviction, sentencing and imprisonment of the consequences of persistence in criminality \* \* \*." *Cooper v. State, supra.*

"The purpose of the statute is to more severely penalize those persons whom prior sanctions have failed to deter from committing felonies." (Citation omitted). *Hall v. State,* (1980) Ind., 405 N.E.2d 530, 536.

"Its purpose is to prevent an offender who has been convicted of several felonies from being sentenced as an habitual offender before he has had an adequate chance to respond affirmatively to the sentences for such convictions." Criminal Code Study Commission Comments to Ind. Code § 35–50–2–8 (West 1978).

With respect to the State's contention that the error was harmless, we have previously held that it was not error to prove additional prior felonies. *Hall v. State, supra,* and cases there cited. But in those cases, the additional offenses qualified under the statute, and all prior convictions, etc. were proved. Even so, unless special findings are to be submitted, the prosecuto-

rial wisdom of charging prior offenses in excess of the statutorily required number is subject to question. But here, the defendant was improperly charged, over his objections, and evidence was submitted on those improper charges. Notwithstanding that competent evidence was admitted to support a finding that the defendant "had accumulated two (2) prior unrelated felony convictions," under this state of the record, it cannot be discerned which of the four alleged prior convictions provided the factual basis for the jury's determination.

■ A general verdict can not stand when the case was tried and submitted on two theories, one bona fide and the other not. *Bachellar v. Maryland,* (1970) 397 U.S. 564, 569–71, 90 S.Ct. 1312, 1315–16, 25 L.Ed.2d 570, 575–76; *Williams v. North Carolina,* (1942) 317 U.S. 287, 291–92, 63 S.Ct. 207, 210, 87 L.Ed. 279, 282, 143 A.L.R. 1273.

Defendant also asserts that he could not be sentenced as an habitual offender on the basis of the 1956 and 1967 convictions, inasmuch as those convictions had been utilized previously to support sentencing of him as an habitual offender in the aforementioned ongoing proceedings in Howard County. This "double jeopardy" argument has been resolved contrary to Defendant's position in *Hall v. State, supra,* and cases there cited.

We have previously held that the issue of guilt and the issue of habitual offender's status are severable, when necessary to carry out the statutory purpose and when severance is not violative of the defendant's due process rights. *State v. McMillan, supra.* Here, the defendant knew from the amended information filed well in advance of trial that the State would seek to have him sentenced as an habitual offender on the basis of the 1956 and 1967 convictions. Thus there can be no claim that the severance places him at a disadvantage. The cause is, therefore, remanded to the trial court with instructions to sustain Defendant's objections to the April 3, 1979 amendment to the information and for further proceedings consistent with this opinion.

In all other respects, the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.