879 N.E.2d 1192 (2008)
N.J. by L. Lee JACKSON and Judith Jackson, Parents and Next Friends, Appellants-Plaintiffs,
v.
METROPOLITAN SCHOOL DISTRICT OF WASHINGTON TOWNSHIP; Ingaborg Willis; Washington Township School Police; Marion County Sheriff, Jason Swanson; and John Riggers, Appellees-Defendants.
No. 49A05-0701-CV-30.
Court of Appeals of Indiana.
January 31, 2008.
*1194 Paul D. Ludwig, Bator Redman Bruner Shive & Ludwig, P.C., Indianapolis, IN, Attorney for Appellants.
Steven D. Groth, Michael D. Rogers, Bose McKinney & Evans, LLP, Indianapolis, IN, Attorneys for Appellee.

OPINION
MAY, Judge.
N.J. appeals summary judgment for the Metropolitan School District of Washington Township, Washington Police Department, Marion County Sheriff, Ingaborg Willis, Officer Jason Swanson, and Officer John Riggers. We affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY
On August 27, 2003, N.J. was a student in a Washington Township school. On that day, she was riding home on a school bus driven by Willis. During the bus ride, N.J. and B.S.C. got into an argument. Willis reported there was a fight on her bus and asked that the students be removed. When asked to confirm whether there was a fight currently going on, Willis stated the girls were "at each other's throats." (Abridged Bus Video, time stamp 15:56.) Willis stopped the bus and waited for police officers employed by the School District to arrive. Meanwhile, N.J. called her father.
Officers Riggers and Swanson responded. Apparently, they believed there to be a physical fight involving choking. They ordered N.J. and B.S.C. off the bus. N.J. told the officers her father had instructed her not to get off the bus, but then promptly got off the bus and allowed herself to be handcuffed. The officers viewed the videotape from the bus and determined there had been no physical fight. Nevertheless, N.J. was transported to the Juvenile Center for alleged disorderly conduct.
N.J. filed suit under the Indiana Tort Claims Act ("ITCA") against Willis, the School District, Officers Swanson and Riggers, the Washington Police Department, and the Marion County Sheriff's Department. Her complaint alleged: (1) Willis made a false report to the police; (2) the officers lacked probable cause to arrest her; (3) the officers lacked probable cause to charge her with disorderly conduct; (4) the officers used excessive force when they placed her under arrest; and (5) the School District and Sheriff's Department were vicariously liable. The defendants filed motions for summary judgment, which the trial court granted.

DISCUSSION AND DECISION
In reviewing summary judgment, we apply the same standard as the trial court. Wright v. American States Ins. Co., 765 N.E.2d 690, 692 (Ind.Ct.App.2002). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the non-moving party," here, Jackson. Sanchez v. Hamara, 534 N.E.2d 756, 757 (Ind.Ct.App. 1989). The moving party bears the burden of proving there is no genuine issue of material fact; however, once this burden is sustained, the opponent may not rest on the pleadings, but must set forth specific facts showing there is a genuine issue for trial. T.R. 56(E); Oelling v. Rao, 593 N.E.2d 189, 190 (Ind.1992). We consider only the evidence designated to the trial court. T.R. 56(H); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind.2001). We affirm summary judgment on any legal basis supported by the designated evidence. Bernstein v. Glavin, 725 N.E.2d 455, 458-59 (Ind.Ct.App.2000), trans. denied 741 N.E.2d 1248 (Ind.2000). The appellant *1195 bears the burden of persuading us the grant of summary judgment was erroneous. Bank One Trust No. 386 v. Zem, Inc., 809 N.E.2d 873, 878 (Ind.Ct.App. 2004), trans. denied 822 N.E.2d 975 (Ind. 2004).
Immunity from liability under the ITCA is a question of law, but "may require extended factual development." East Chicago Police Dep't v. Bynum, 826 N.E.2d 22, 26 (Ind.Ct.App.2005), trans. denied 855 N.E.2d 1011 (Ind.2006). In this case, there are questions of fact that must be resolved, and at the summary judgment stage, those facts must be resolved in favor of N.J.
1. Willis' Report to the Police
The Appellees argue Willis' report to the police was an attempt to enforce school rules and is therefore immune under Ind.Code § 34-13-3-3(8), which gives governmental entities and employees immunity from liability when the loss results from the "enforcement of . . . a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment."
The evidence N.J. designated indicates she violated the rules by standing and yelling, but that is not the conduct Willis reported.[1] Several other students engaged in similar conduct during the bus ride without comment from Willis. Instead, Willis reported a "fight," (Abridged Bus Video, time stamp 15:51), although she knew N.J. and B.S.C. had not been physically fighting or doing anything else for which they could be arrested. Willis confirmed a fight was occurring after the verbal altercation had subsided. She told the girls they might as well "go ahead and fight" so she could have them sent to the Juvenile Center. (Id. at 15:54.) B.S.C. called her mother, and Willis told B.S.C.'s mother the girls had been "getting ready to fight." (Id. at 16:04.) From these statements, it can be inferred Willis intended to give the police the impression the girls had been physically fighting. The evidence also suggested that after the police arrived, Willis urged them to arrest N.J.
The evidence, viewed in the light most favorable to N.J., is that Willis intentionally gave police a false report and wanted N.J. to be arrested for conduct that never occurred. The Appellees' characterize this as a "disagreement with the sanction imposed" for N.J.'s violation of the rules. (Appellees' Br. at 11.) Making a false report of a physical fight is not related to enforcement of school rules prohibiting standing and yelling on the bus. Therefore, a genuine issue of material fact remains as to whether the Appellees are immune to this claim.
2. N.J.'s Arrest
N.J. claims there was a question of fact as to whether the Officers had probable cause to arrest her. We disagree.
"Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which would warrant a person of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense." Miller v. City of Anderson, 777 N.E.2d 1100, 1104 (Ind.Ct.App.2002), trans. denied 792 N.E.2d 42 (Ind.2003). According to N.J.'s own version of the facts, Willis reported a physical fight on the bus. Officer Swanson's report stated:
On August 27, 2003 . . . security was notified by school radio of a fight on bus 85. The bus driver . . . stated on the *1196 radio that a fight was in progress; Transportation Base asked bus 85, again to verify that a fight was indeed in progress. . . . While [en route] to bus 85, the driver stated that the two girls were choking each other. Upon arrival, both Sgt. Riggers and Lt. Swanson could hear yelling from the bus. Sgt. Riggers and Lt. Swanson went to the bus door to meet the bus driver; who stated that two girls were fighting and that they needed to be removed from the bus.
(Appellant's App. at 30.)
N.J. does not contend the report misrepresents the officers' understanding of what was happening when they responded to the call and arrived at the scene. That the officers later discovered there had been no physical fight has no bearing on whether there was initially probable cause to arrest Jackson. See Riggenbach v. State, 272 Ind. 322, 397 N.E.2d 953, 955 (1979) ("That some of the underlying facts may be shown at a later date to be untrue does not change the fact that probable cause did exist for the arrest."). Therefore, the undisputed facts demonstrate the officers had probable cause to remove N.J. from the bus and place her under arrest. No tort liability could arise from the officers' initial actions.
3. N.J.'s Detention for Disorderly Conduct
Although there was probable cause for N.J.'s initial arrest, a genuine issue of material fact remains as to whether her continued detention, after the police determined there had been no physical fight, was lawful. N.J. was detained and charged with disorderly conduct.
A person who recklessly, knowingly, or intentionally:
(1) engages in fighting or in tumultuous conduct;
(2) makes unreasonable noise and continues to do so after being asked to stop; or
(3) disrupts a lawful assembly of persons; commits disorderly conduct, a Class B misdemeanor.
Ind.Code § 35-45-1-3(a). The Appellees assert N.J.'s conduct on the bus and after her arrest was either "tumultuous" or "unreasonably noisy."
"Tumultuous conduct" is "conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property." Ind.Code § 35-45-1-1. After viewing the tape from the bus, the officers could not have concluded Jackson's conduct was tumultuous. The girls were yelling at each other, but they never approached each other. At one point N.J. even moved away from B.S.C. The girls argued with Willis after she told them she had called the police, but there was no indication serious bodily injury or substantial property damage was likely to occur.
When the police arrived, they ordered N.J. off the bus. She said her father had told her not to get off the bus, but she complied with the officers' order seconds later. She permitted herself to be handcuffed as soon as she stepped off the bus. There was no indication she could or would injure anyone or damage any property.
Although Officer Riggers stated in his affidavit he "observed [N.J.] engaging in disruptive and tumultuous behavior while in custody," (Appellant's App. at 28), the conduct described in his report was not "tumultuous." Officer Riggers reported N.J. said, "The bus driver is a liar," and repeatedly said, "Law Suit, Law Suit!" (Id. at 30.) He stated the girls were rude and said their fathers would not let the officers do anything to them. He also stated the girls would not tell them what happened on the bus. Even if N.J. made rude comments, her conduct was not tumultuous. *1197 Furthermore, N.J. could not be charged with disorderly conduct for refusing to give information about the events leading to her own arrest. Therefore, there was no tumultuous conduct to justify N.J.'s continued detention, and the court should not have granted summary judgment on this ground.
At most, N.J.'s conduct may have been unreasonably noisy. Unreasonable noise is "too loud for the circumstances," Johnson v. State, 719 N.E.2d 445, 448 (Ind. Ct.App.1999), and infringes "upon the right to peace and tranquility enjoyed by others." Hooks v. State, 660 N.E.2d 1076, 1077 (Ind.Ct.App.1996), trans. denied (Ind. 1996). The videotape from the bus demonstrates N.J. was not particularly loud in comparison to other students on the bus. While it may be preferable for students to speak quietly on a bus, one does not expect "peace and tranquility" on a school bus. See id. There is an issue of fact whether N.J.'s speech on the bus was too loud for the circumstances.
N.J. denies making comments to Willis or B.S.C. after the police arrived. She also denies making rude comments to the police. Even if she did, the undisputed evidence does not show they were made in a loud volume or that N.J. was asked to stop. See Ind.Code § 35-45-1-3(a)(2); Hanna v. State, 726 N.E.2d 384, 388-89 (Ind.Ct.App.2000) (disorderly conduct statute not violated unless person continues to make unreasonable noise after being warned to stop). Therefore, there is a material question of fact as to whether the officers had probable cause to detain N.J. for making unreasonable noise.
4. Use of Force
N.J. alleged she was arrested with excessive force. In response to Appellees' motion for summary judgment, she designated her affidavit, which states she was "handcuffed with excessive force in full view of the public and other students." (Appellant's App. at 13.) She also designated her deposition, in which she stated one of the officers kicked her behind her knees and caused her to fall to the ground.
Appellees did not specifically address this claim in their motion for summary judgment, but made only a general argument that the arrest was reasonable. Ind.Code § 35-41-3-3 authorizes officers to use reasonable force to effect lawful arrests.[2] Whether conduct was reasonable is generally not an appropriate issue to resolve on summary judgment. Short by Southerland v. Estwing Mfg. Corp., 634 N.E.2d 798, 801 (Ind.Ct.App.1994). That is particularly the case here, where we have concluded that there remain genuine issues of material fact concerning N.J.'s conduct. Therefore, the trial court erred by granting the Appellees summary judgment on N.J.'s claim of excessive use of force.

CONCLUSION
There are genuine issues of material fact as to: (1) whether Willis made a false report or was attempting to enforce school rules; (2) whether the officers had probable cause to detain N.J. on charges of disorderly conduct premised upon unreasonable noise after they viewed the tape from the bus; and (3) whether the officers used excessive force. Accordingly, the trial court erroneously granted summary *1198 judgment on those issues. However, N.J.'s claim that the officers initially lacked probable cause to arrest her fails as a matter of law, and the trial court properly granted summary judgment on that issue. Therefore, we affirm in part, reverse in part, and remand.
Affirmed in part, reversed in part, and remanded.
CRONE, J., concurs.
DARDEN, J., concurs in result.
NOTES
[1] N.J. does not dispute her conduct on the bus violated school rules. Nor does she dispute the bus driver may enforce those rules by asking that students be removed from the bus.
[2] As Ind.Code § 35-41-3-3 creates a statutory duty to use reasonable force in arresting a person, officers are not immune from such a claim under ITCA. See Patrick v. Miresso, 848 N.E.2d 1083 (Ind.2006) (officer's negligent driving not within ITCA "enforcement of a law" immunity because there was a statutory duty to operate emergency vehicles "with due regard for the safety of all persons").