**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 17 2012, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. HARDTKE**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MARK PHILLIPS, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )  No. 71A03-1201-CR-35 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Richard L. McCormick, Judge
Cause No. 71D01-1107-CM-3967

**October 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Mark Phillips appeals his conviction for Disorderly Conduct,[1] a class B misdemeanor, challenging the sufficiency of the evidence. Specifically, Phillips argues that the State failed to prove that he made unreasonable noise and continued to do so after having been asked to stop by a police officer. Phillips also contends that the State failed to prove that Phillips's words were fighting words or that his words caused a public nuisance. Finding the evidence sufficient, we affirm the trial court's judgment.

FACTS

On the morning of July 17, 2011, Doris Smith called 911 and told the dispatcher that Phillips, her fiancée, was threatening her son with a knife. At approximately 11:00 a.m., the dispatcher contacted Officer James Sweeney of the South Bend Police Department regarding the disturbance. Officer Sweeney and another patrolman went to Phillips's residence. When Officer Sweeney opened the door to his patrol car, the officer could hear a man and a woman screaming in the house.

Smith allowed one of the officers to enter her house. She had been crying and appeared "visibly rattled." Tr. p. 8. Although no one else was on the main floor of the home, Officer Sweeney could hear Phillips cursing and screaming from the upper level. Officer Sweeney ascended two stairs and ordered Phillips to the main floor. Phillips walked down the stairs and "was very agitated, pacing back and forth, cursing." Id. at 12. Phillips was "sweating, screaming, yelling, [and] cursing." Id.

---

[1] Ind. Code § 35-45-1-3.

Smith asked that Phillips be removed from the home. When Officer Sweeney asked Phillips to follow him outside, Phillips responded that it was his "MF house, why does [he] have to leave." Id. at 13. Officer Sweeney and Phillips exited the back door of the house into a common area of the duplex building. Id. Several people were outside at the time in adjacent yards.

Officer Sweeney explained the situation to Phillips and offered to drive him elsewhere. Phillips continued to scream profanities, including that "this is my MF house, I haven't done—fill in your explicative [sic]." Id. at 14. Officer Sweeney then told Phillips to stop screaming because "there are people outside, they don't want to hear this, [Phillips is] upsetting [his] wife." Id. at 16. Phillips "repeated back to [Officer Sweeney] that this is my house, I'm not leaving, I can do what I want, I didn't call you." Id. at 16. Officer Sweeney ordered Phillips to stop screaming at least three times.

Phillips screamed profanities for approximately two minutes as the neighbors in the adjacent yards watched. After "several loud bursts of cursing," Officer Sweeney handcuffed Phillips and placed him in his police vehicle. Tr. p. 16, 31. Phillips "continued to scream and yell, curse." Id. at 16. Phillips began screaming about bail money and did not stop the profane tirade until he was secured in the police vehicle.

On July 18, 2011, the State charged Phillips with disorderly conduct, a Class B misdemeanor. Following a bench trial on December 7, 2011, Phillips was found guilty as charged. He was later sentenced to six days in the St. Joseph County Jail, with credit for six days already served. Phillips now appeals.

3

DISCUSSION AND DECISION

In addressing Phillips's challenge to the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. Mitchell v. State, 813 N.E.2d 422, 427 (Ind. Ct. App. 2004). Rather, we look solely to the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. Id. A reasonable inference from the evidence supporting a verdict is enough for us to find the evidence sufficient. Blackman v. State, 868 N.E.2d 579, 583 (Ind. Ct. App. 2007). We will affirm a defendant's conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Anderson v. State, 881 N.E.2d 86, 91 (Ind. Ct. App. 2008).

To convict Phillips of disorderly conduct as charged, the State must prove that he (1) recklessly, knowingly, or intentionally (2) made unreasonable noise (3) and continued to do so after being asked to stop. I.C. § 35-45-1-3. As noted above, Phillips argues that the State failed to prove that he made unreasonable noise, that his yelling of profanities did not constitute a public nuisance, and that he did not engage in "fighting words."[2] Appellant's Br. p. 7-10.

In accordance with the disorderly conduct statute, noise is "unreasonable" if it is too loud for the circumstances. See Yowler v. State, 894 N.E.2d 1000, 1003 (Ind. Ct. App. 2008) (finding that the yelling of loud profanities was sufficient to sustain a conviction for disorderly conduct where the yelling drew the attention of neighbors).

---

[2] "Fighting words" are those "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942).

4

Moreover, we are not concerned with the content of the message itself. In other words, the disorderly conduct statute prohibits "context-inappropriate volume." Whittington v. State, 669 N.E.2d 1363, 1367 (Ind. 1996) (emphasis in original). And as we observed in Hooks v. State, 660 N.E.2d 1076, 1077 (Ind. Ct. App. 1996), "the prohibition against unreasonable noise in Indiana's disorderly conduct statute . . . is aimed at the intrusiveness and loudness of expression, not whether the content of the language is obscene or provocative."

Loud noise may be held to be unreasonable for various reasons, including "[loud] outbursts [that] could agitate witnesses and disrupt police investigations. It could make coordination of investigations and medical treatment more difficult. Finally, loud noise can be quite annoying to others present at the scene." Whittington, 669 N.E.2d at 1367.

As discussed above, when Phillips accompanied Officer Sweeney outside, there were several people in adjacent yards, and Phillips was screaming and cursing. Tr. p. 6, 14. Officer Sweeney described Phillips's volume as a seven or an eight out of ten, with ten being the loudest that he had ever heard. Id. at 14. When Officer Sweeney ordered Phillips to stop screaming because his yelling could upset Smith or his neighbors, Phillips continued to yell and scream. Id. at 16. Phillips's two minutes of cursing drew the attention of the individuals in the other yards. Id. at 16, 30.

Phillips's profane tirade fits several of the examples of unreasonable noise that our Supreme Court delineated in Whittington, including agitating Smith, and/or interfering with police investigation. Whittington, 669 N.E.2d at 1367. Officer Sweeney expressly

5

warned Phillips about the consequences of his yelling, and it is likewise apparent that the noise Phillips made was unreasonable because it drew the attention of others. Anderson, 881 N.E.2d at 89, 91. And Phillips continued to create unreasonable noise after Officer Sweeney ordered him to stop on multiple occasions.

Although Phillips argues that his conviction cannot stand because his words did not constitute "fighting words," the disorderly conduct statute only requires noise "too loud for the circumstances." Yowler, 894 N.E.2d at 1003. There is no requirement in the statute—nor have we ever read a requirement into the statute—that a defendant's words must amount to fighting words to sustain a conviction for disorderly conduct.

In Cavazos v. State, 455 N.E.2d 618 (Ind. Ct. App. 1983), we addressed the State's contention as to whether fighting words inherently constituted unreasonable noise. Id. at 619. Even after determining that Cavazos's words did not amount to "fighting words," the panel then addressed whether the volume of Cavazos's words constituted unreasonable noise. Id. at 621. In short, Phillips's screaming of profanities does not have to constitute "fighting words" to sustain a conviction for disorderly conduct. See Anderson, 881 N.E.2d at 91 (holding that the defendant's yelling of profanities in a tanning salon loudly enough to draw the attention of other customers was sufficient).

Finally, we note that there is no requirement in the disorderly conduct statute that Phillips's conduct must constitute a public nuisance. In Whittington, our Supreme Court declared that "significantly, our legislature deleted any reference to a requirement that a person act purposely or recklessly toward annoying the public. Instead, the mental

6

element of Indiana's statute. . . . applies to the making of unreasonable noise, not to producing effects with the noise." Whittington, 669 N.E.2d at 1367. The defendant's proposed requirement of a public nuisance was specifically rejected, where it was stated that "the application of the statute can extend to situations in addition to those constituting public nuisance." Id. In short, we find that the evidence was sufficient to support Phillips's conviction for disorderly conduct.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.